**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **EMMANUEL UKO AKPAN,** | § | |
| | § | |
| **Movant,** | § | |
| | § | **No. 3:12-cv-550-L-BH** |
| **V.** | § | **No. 3:04-cr-036-L** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent.** | § | **Referred to U.S. Magistrate Judge** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to Special Order 3-251, this habeas case has been automatically referred for findings, conclusions, and recommendation.  Based on the relevant findings and applicable law, the motion to correct, vacate, or set aside sentence pursuant to 28 U.S.C. § 2255 should be denied with prejudice.

**I.  BACKGROUND**

Emmanuel Uko Akpan (Akpan) challenges his federal conviction and sentence in Cause No. 3:04-CR-36-L.  The respondent is the United States of America (Government).

On May 17, 2004, Akpan entered a plea of guilty to health care fraud in violation of 18 U.S.C. § 1347 and to engaging in a monetary transaction in property derived from unlawful activity in violation of 18 U.S.C. § 1957(a), in connection with a fraudulent scheme to bill Medicare for power wheelchairs and accessories.  (*See* doc. 19; *see also* docs. 13, 14.)[1]  He moved to withdraw his guilty plea on October 18, 2004, a hearing was held on February 7, 2005, and the motion was

---

[1] All document numbers refer to the assigned docket number for the underlying criminal action.  Page numbers refer to the cm/ecf system page number at the top of each page rather than the page numbers at the bottom of each filing.

denied by memorandum opinion and order on December 5, 2008.  (*See* docs. 37, 44, 50.)  On June 30, 2009, the Court sentenced Akpan to a term of 60 months' imprisonment, which was below the applicable Guideline range, to be followed by a 3-year term of supervised release.  (*See* doc. 74.) Akpan's conviction was affirmed on direct appeal by mandate issued August 4, 2010, and his petition for writ of certiorari was denied on November 15, 2010.  (*See* docs. 118, 121); *United States v. Akpan*, 383 Fed. App'x 457 (5th Cir.), *cert. denied*, 131 S. Ct. 620 (2010).

In his motion to vacate, filed February 22, 2012 (Mot.),[2] Akpan raises the following claims:

(1)    the government breached the plea agreement (Ground One) (*see* Mot. at 4, 33-39),

(2)    the Court abused its discretion by denying his motion to withdraw his guilty plea (Ground Two) (*see* Mot. at 6),

(3)    he received ineffective assistance of counsel at various stages of the proceedings (Ground Three) (*see* Mot. at 7),

(4)    he was denied his Due Process and Sixth Amendment rights (Ground Four) as a result of the excessive delay in a ruling on his motion to withdraw guilty plea (Mot. at 8, 46-51),

(5)    his plea was involuntary due to the ineffective assistance of counsel (*see* Mot. at 39-40, 43),

(6)    he is actually innocent (*see* Mot. at 16, 18, 26), and

(7)    the Court lacked jurisdiction because the indictment was not returned in open court (*see* Mot. at 10).

The Government filed a response brief on April 23, 2012.  (*See* Response (Resp.).)  It contends that

---

[2]  Akpan's § 2255 motion was actually first received by the Court on December 27, 2010, as an attachment to his *Motion for Leave to File "Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255" and "Emergency Motion for Release Pending Ruling on § 2255 Motion"*.  (*See* doc. 122; *see also* doc. 124.)  He requested leave to file it because the Court's order dated August 6, 2010, required him to first obtain leave of court to file any document based on his continued filing of "needless and unnecessary documents."  (*Id.*; *see also* doc. 116.)  Akpan's motions for leave were denied by order dated April 20, 2011, and he sought to appeal the denial.  (*See* docs. 128-30.) On February 22, 2012, the Court vacated the portion of its April 20, 2011 order denying him leave to file a § 2255 motion and instructed the Clerk to file Akpan's proposed § 2255 motion attached to his motion for leave to file.  (*See* docs. 136.)  His § 2255 motion was filed in this case on that date.

Akpan's claims that the Government breached his plea agreement and that his due process rights were violated by the delay in sentencing are both procedurally barred because he failed to raise them on direct appeal.  (*Id.* at 20, 25).  Akpan filed his  reply on June 19, 2012.  (*See* Reply (Repl.).)  He does not dispute that he failed to raise these claims on direct appeal.

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted).  It is well established that "a collateral challenge may not do service for an appeal."  *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).  A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review.  *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

Where a § 2255 movant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if he can first demonstrate either "cause" and actual "prejudice," or that he is "actually innocent."  *Bousley v. United States*, 523 U.S. 614, 622 (1998), *citing Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986); *Frady,* 456 U.S. at 167-68.  However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments."  *Massaro v. United States*, 538 U.S. 500, 503-04 (2003).  The Government may also waive the defense.  *Willis*, 273 F.3d at 597.

- 3 -

### III.  ACTUAL INNOCENCE

Throughout his § 2255 motion, Akpan asserts that he is innocent of the crimes to which he pled guilty.  (Mot. at 16, 18, 26).  To the extent that Akpan is attempting to raise a claim that he is actually innocent, both the Supreme Court and the Fifth Circuit have held that a stand-alone claim of actual innocence is not a ground for habeas relief.  *See Herrera v. Collins*, 506 U.S. 390, 400 (1993); *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000).  Furthermore, in *Herrera*, the Supreme Court stated that, even if "truly persuasive" showing of actual innocence would warrant federal habeas relief, the threshold for such a claim would be "extraordinarily high." *Id.* at 417.

A claim of actual innocence can overcome a procedural bar, however.  In order to overcome a procedural bar on this basis, Akpan must demonstrate that, in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him.  *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995).  Akpan has not met this high burden.  He generally asserts his innocence but has not overcome either the recitation of facts set forth in the factual resume he signed, or the facts as set forth in Pre-Sentence Report (PSR).  Any actual innocence claim raised by Akpan is without merit.

### IV.  BREACH OF PLEA AGREEMENT

Akpan seeks habeas relief based on the alleged breach of his 2004 plea agreement and factual resume.  (*See* Mot. at 4 (Ground One), 36-39).  The Government responds that this claim is procedurally barred because it was not raised on direct appeal and that it is also without merit. (Resp. at 20).  Akan argues, in part, that he did not raise this issue on direct appeal due to the ineffective assistance of his appellate lawyer.  (*See* Mot. at 30, 51, 53).

While an attorney's failure to raise an issue can constitute cause, attorney error that does not rise to ineffective assistance of counsel cannot.  *Murray*, 477 U.S. at 492.  As discussed below,

Akpan's appellate attorney was not ineffective.  Even assuming his allegation of ineffective assistance is sufficient to establish cause, he still cannot show that he suffered any prejudice because his plea agreement was not breached by the Government.

When considering an alleged breach of a plea agreement, the Court applies general principles of contract law and considers "whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement." *United States v. Lewis,* 476 F.3d 369, 387-88 (5th Cir. 2007) (quoting *United States v. Valencia,* 985 F.2d 758, 761 (5th Cir. 1993)).  The movant bears the burden of demonstrating a breach of the agreement by a preponderance of the evidence.  *Id.* at 387.

Here, Akpan claims that the terms of the plea agreement limit the Government to arguing for a loss amount of $710,000, and that the prosecutor violated this contract when he objected to the PSR and urged at sentencing that Akpan be held responsible for an intended loss amount of $2.8 million.  (*See* Mot. at 4, 33-39).  The plain terms of the plea agreement do not support Akpan's claim.  The agreement is silent as to any stipulated loss amount.  (*See* doc. 14 at 5) (setting forth "Government's agreement").  The factual resume states, "Akpan admits he and the other participants caused Medicare to pay approximately $710,000.00 of fraudulently obtained proceeds to his Stat Medical account."  (*Id.;* doc. 13 at 3.)  As the Court recognized at sentencing, the actual loss to Medicare – that is, the amount actually paid by Medicare to Akpan – was indeed $710,000; however, the proper loss amount for Guidelines purposes is the amount Akpan billed or submitted to Medicare, which was $2,815,727.  (*See id.,* doc. 92 at 8-13.)  To the extent that Akpan cites testimony from his first defense attorney that the $710,482 figure was a contractual "cap on the amount of loss that [Akpan was] going to be liable for," this testimony refers to a letter agreement between the parties to assure that any admissions made during an off-the-record proffer session

- 5 -

could not be used directly against Akpan.  (*See* doc. 56-2 at 35-37.)

Akpan has not demonstrated a breach of the plea agreement.  Therefore, even if he could overcome the procedural bar, this claim is without merit.

### V.  DELAY IN RULING ON MOTION TO WITHDRAW

Akpan also alleges that his Due Process and Sixth Amendment rights were violated when the Court failed to timely rule on his motion to withdraw guilty plea.  He claims that he was harmed by the extended exposure to conditions of pre-sentencing release, including travel restrictions, because he suffered from anxiety, his employment was disrupted, and his guideline range was increased as a result of the delay.  (Mot. at 8 (Ground Four), 46).  This ground is also procedurally barred for failure to raise it on direct appeal. *See Frady,* 456 U.S. at 167-68.  In addition, it lacks merit.

The Sixth Amendment right to a speedy trial applies to sentencing.  *United States v. Abou-Kassem*, 78 F.3d 161, 167 (5th Cir. 1996), *citing United States v. Howard*, 577 F.2d 269 (5th Cir. 1978).  Whether sentencing delays violate a defendant's Sixth Amendment rights is reviewed pursuant to the factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), which include the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and the resulting prejudice to the defendant, if any.  *See United States v. Peters*, 349 F.3d 842, 850  (5th Cir. 2003).

In this case, Akpan pled guilty on May 17, 2004, and the Court entered a sentencing scheduling order on May 20, 2004.  (*See* docs. 19, 20.)  Akpan moved for an extension of time to object to the PSR on July 21, 2004, and for a continuance of sentencing on September 1, 2004; both motions were granted.  (*See* docs. 32-35.)  His sentencing did not proceed as scheduled on October

18, 2004, and he moved to withdraw his guilty plea on October 20, 2004.  (*See* docs. 36, 37.)  The Court conducted a hearing concerning the motion on February 7, 2005.  (*See* doc. 44.)  Nothing substantive occurred in the case until November 10, 2008, when Akpan filed a motion for permission to travel to Nigeria to attend a funeral.  (*See* doc. 47.)  The Government filed its opposition on November 17, 2008, and the Court denied the motion on November 26, 2008.  (*See* docs. 48-49.)  On December 5, 2008, the Court denied Akpan's motion to withdraw his plea, and it issued a sentencing scheduling order on December 9, 2008.  (*See* docs. 50-51.)  Akpan sought and received several continances of the deadline to file objections to the PSR and to his sentencing, and he was ultimately sentenced on June 30, 2009.   (*See* docs. 52-55, 59, 63, 66, 70, 74.)

Almost four years passed between the February 2005 hearing concerning the motion to withdraw Akpan's guilty plea and the December 2008 denial of the motion, which was apparently triggered by Akpan's motion for permission to travel outside of the country.  The Fifth Circuit has stated that a delay of four years in sentencing is "clearly unreasonable," but it does not by itself require relief.  *United States v. Campbell*, 531 F.2d 1333, 1335 (5th Cir. 1976).  Instead, an unreasonable delay triggers an analysis of the other *Barker v. Wingo* factors.  *See Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993).

As to the second factor, the delay resulted from a clerical error by the Court.  Because there was no purposeful attempt to delay sentencing by the Government or Akpan, this factor is neutral.  *Id*. at 569.  Akpan never asserted his right to a speedy sentencing, and he does not allege that he ever instructed his attorney to bring the delay to the Court's attention.  It was only brought to the Court's attention because Akpan filed a motion for permission to travel out of the country, not because he sought to be sentenced.  The third factor therefore weighs against Akpan.  *See United States v.*

*Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976).

Finally, and most importantly, Akpan has not shown any prejudice resulting from the delay, the fourth factor. The delay was discussed at length during Akpan's sentencing. (*See* doc. 92 at 32-59). The Court recognized the delay, but noted that Akpan himself had failed to request any resolution of his motion while he was free on pre-sentencing release. It found that pre-sentencing supervision does not remotely rise to the level of incarceration, and that Akpan benefitted from the delay more than he was harmed by it because he was not detained during that time. (*Id.* at 36-38, 41-42). It amended Akpan's guideline range to reflect that he was no longer entitled to credit for acceptance of responsibility because he attempted to withdraw his guilty plea, and that the proper loss amount was the amount he fraudulently billed rather than the actual payments he received from Medicare. (*Id.* at 56-57). These amendments to the guideline range were not caused by the delay in sentencing and would have occurred absent any delay. The Court noted that a sentence within the guideline range would under normal circumstances be fair and reasonable, but it reduced Akpan's sentence to ten months below the bottom of the guideline range based on the delay and his exemplary behavior while on release during the delay. (*See id.* at 58-59). Even assuming that Akpan had been sentenced sooner, his guideline sentencing range would have been calculated in the same manner. Because Akpan cannot establish any prejudice from the delay in sentencing, has not overcome the procedural bar and this claim is also without merit. It should therefore be denied. *See United States v. Celestine*, 2011 WL 6176816, *8-10 (W.D.La. Dec. 9, 2011) (no violation of right to speedy trial where the delay was not due to purposeful act by government, Celestine never brought the delay to the court's attention, he was never incarcerated on the charge, but was instead released on bond, and there was no evidence that his sentence was affected by the delay).

## VI.  LACK OF JURISDICTION

Akpan appears to claim that the Court lacked jurisdiction over his criminal case based upon a faulty indictment.  (*See* Mot. at 10).  He did not raise this claim on appeal, and it is therefore also procedurally barred unless both cause and prejudice are shown.  *See Frady,* 456 U.S. at 167-68.  He cannot establish prejudice because this claim is without merit.

The papers filed with the indictment in his criminal case show that the indictment was signed by the grand jury foreperson and returned in open court before Judge Sidney A. Fitzwater on February 3, 2004.  (*See* doc. 1 at 13-14); *see also Momah v. United States*, No. 4:10-CV-369-A, 2010 WL 3431657, at *2 (N.D. Tex. Aug. 30, 2010) (finding similar claim conclusory and frivolous where record reflected signatures of foreperson and judge who received return).  In addition, claims of defective indictments, including allegations that an indictment was not returned in open court, are non-jurisdictional and do not deprive a court of the power to hear a case.  *See United States v. Watts*, No. 1:02-CR-42, 2010 WL 1438818, at *1-*2 (E.D. Tex. Mar. 19, 2010) (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)), *rec. adopted*, 2010 WL 1443009 (E.D. Tex. Apr 08, 2010) ("defects in an indictment do not deprive a court of its power to adjudicate a case").  This claim should be denied.

## VII.  MOTION TO WITHDRAW PLEA

Akpan maintains that the Court violated his constitutional rights by refusing to permit him to withdraw his May 17, 2004 guilty plea.  (*See* Mot. at 5 (Ground Two).)

This claim was considered and rejected on direct appeal.  *See Akpan*, 383 F. App'x at 458. Defendants who collaterally attack their federal convictions may not raise grounds previously raised on direct appeal.  *United States v. Rocha*, 109 F.3d 225, 229-30 (5th Cir. 1997).  "It is settled in this

Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones,* 614 F.2d 80, 82 (5th Cir. 1980)) (claims raised and resolved in a prior appeal may not be revisited on collateral review). Accordingly, Akpan is not entitled to habeas relief on this basis.

## VIII. VOLUNTARINESS OF PLEA

Akpan further claims that his plea was involuntary due to ineffective assistance of counsel because his first attorney coerced him into pleading guilty and promised him that he would withdraw the guilty plea after Akpan was released from pretrial custody. (*See* Mot. at 39-40, 43).

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) (a plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent'") (quoting *Brady*, 397 U.S. at 748). A plea induced by threats, improper promises, deception, or misrepresentation is not voluntary. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the

nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly. It requires "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect under-standing of the consequences, however. The Court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty plea proceedings "have focused on three core

concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28.  A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002).  "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

## A.    <u>Alleged Promise</u>

Akpan asserts that his guilty plea was rendered involuntary because his attorney, Sam Ogan, promised him that he would file a motion to withdraw the guilty plea after Akpan pled guilty and was released on bond.   At his rearraignment hearing, in response to questions about the voluntariness of his plea and the factual basis for it, Akpan averred that (1) he had fully discussed the charges against him, the plea agreement, and the factual resume with his attorney; (2) he understood that he was under oath and that he could be prosecuted for perjury is he testified falsely; (3) he understood that he had a right to plead not guilty and have a jury trial with counsel representing him; (4) he understood that by pleading guilty, he was giving up his right to a jury trial, as well as the right to see and hear witnesses, cross-examine witnesses, decline to or choose to testify, and compel witnesses to testify in his defense; (5) he was pleading guilty because he was guilty; (6) no one had threatened or attempted to force him to plead guilty; (7) he had discussed the sentencing guidelines with his attorney and understood that the applicable guideline could not be determined until after a PSR had been prepared; (8) while his attorney had given his advice about

a potential sentence, he understood that no one could promise or predictions regarding any potential sentence and that the district judge alone would make that decision; (9) he understood that the district judge had the authority in some circumstances to impose a sentence that was either more or less severe than the sentence called for by the sentencing guidelines; (10) he could not withdraw his plea if the sentence he received was more severe than he expected; (11) he understood that the statutory maximum sentence for Count 1 and Count 4 was ten years; and (12) he understood that pursuant to the plea agreement he was giving up the right to appeal except under certain circumstances. (doc. 91 at 4-21). Finding Akpan's guilty plea to be knowing and voluntary and that he was competent to plead, the Court accepted it and adjudged him guilty. (*Id.* at 21-22).

Inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). They must also overcome the presumption of regularity and "great weight" accorded court records. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity").

Akpan's own sworn statements at his plea hearing establish that he was not threatened or forced to plead guilty, that he was pleading guilty because he was guilty, and that he understood that he could not withdraw his plea because he was unhappy with the sentence. Akpan attempts to overcome his sworn statements to the Court based on testimony at the hearing on his motion to

withdraw his guilty plea.  While Akpan testified at this hearing that his attorney promised him that he would file a motion to withdraw his guilty plea, Ogan denied that he ever promised Akpan that he would move to withdraw the guilty plea after Akpan pled guilty and was released from pretrial custody. (doc. 56-2 at 39-40, 45).  Ogan explained that he would not advise a client to attempt to withdraw a guilty plea because it usually destroys the value of the guilty plea.  *Id*. at 40.  Ogan further testified that after having a proffer meeting with the prosecutor and federal agents and Akpan, he and the prosecutor reached an agreement that Akpan would plead guilty to two counts of the indictment. *Id*. at 43-44.  Several days prior to Akpan entering his guilty plea, Ogan met with him because he was considering withdrawing the signed plea agreement and factual resume and proceeding to trial, but Akpan decided to plead guilty.  *Id*. at 50-51.  When Akpan pled guilty, Ogan believed that the statements he made to the Court were truthful. *Id*. at 55-56.  After Akpan pled guilty, Ogan filed an unopposed motion to reconsider bond based on a substantial change of condition because Akpan had provided information to the agents and pled guilty, and the motion was ultimately granted.  *Id*. at 57-59.  Akpan later stated a desire to withdraw his guilty plea, and Ogan further testified that Akpan had previously told him that he wanted to plead guilty to the charge and cooperate with the government instead of fighting the charges against him because he wanted to protect and take care of his family. *Id*. at 67-68.  Ogan believed that Akpan wanted to withdraw his guilty plea because the prosecuting attorney had not filed a motion for downward departure in sentencing based on substantial assistance despite Ogan's attempts to obtain one.  *Id*. at 68-69.

In its memorandum opinion and order denying the motion to withdraw, the Court specifically found Ogan's testimony more credible than Akpan's self-serving testimony and found that no promise to file a motion to withdraw had been made to Akpan.  (doc. 50 at 5).  It further found that

Akpan's protests of innocence occurred after the PSR was issued and that Akpan was seeking an assurance from Ogan regarding his sentence that could never be provided. *Id.* Finally, the Court found based on its own observations of Akpan during the hearing that Akpan was a strong-willed individual who would not permit someone to convince him to do something he did not want to do. *Id.* at 5-6. Given this credibility determination, Akpan has not overcome his own sworn statements or the record itself. They reflect that he was not coerced into pleading guilty, that he understood the charge against him, and that he understood the consequences of his guilty plea. His guilty plea was therefore voluntary.

**B.      Ineffective Assistance of Counsel**

Akpan also claims that ineffective assistance of counsel renders his plea involuntary. He contends that Ogan induced him to plead guilty by promising him that, after he pled guilty and was released on bond, Ogan would file a motion to withdraw the guilty plea. Akpan asserts that Ogan also "attacked him through deceitful representation" by informing Akpan after he signed the factual resume and plea agreement that he would not receive the sentencing benefit of acceptance of responsibility if he chose not to plead guilty at the plea hearing, and the intended loss to the victim would be determined by the district judge, whether or not he pled guilty. Ogan also allegedly told him that if he did not plead guilty, he could continue to "sit in jail like Nelson Mandela with your not guilty plea for years." (Mot. at 20, 25).

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335,

344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)).   However, a "defendant's mere subjective understanding that he would receive a lesser sentence" does not render a plea involuntary. *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002).[3]   The plea stands unless the expectation of a lesser sentence resulted from "a promise or guarantee by the court, the prosecutor or defense counsel."   *Id.*

### 1.   *Standard of Review*

To successfully state a claim of ineffective assistance of counsel, Akpan must ordinarily demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).   A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.   *See* 466 U.S. at 696.   The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

Although the *Strickland* test ordinarily applies when a prisoner alleges denial of effective assistance of counsel in the context of a guilty plea, Akpan has alleged a conflict of interest.   (*See* Mot. at 15, 18, 22, 27).   Because these types of ineffective assistance claims are reviewed under different standards, the Court must initially determine whether Akpan's claims change the applicable standard of review.

### a.   Conflict of Interest

When a prisoner shows an actual conflict that adversely affected his attorney's performance and thus denied him his Sixth Amendment right to effective assistance of "conflict-free counsel,"

---

[3]   The Court does not cite *Daniels* for any proposition potentially abrogated in *United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004) (abrogating reliance on a "significantly less harsh test" of prejudice for sentencing errors in the § 2255 context), to the extent that any such abrogation occurred.   *See* 376 F.3d at 438 n.4 (specifically distinguishing *Daniel* because that case dealt with prejudice in the context of § 2254).

*Cuyler v. Sullivan*, 446 U.S. 335 (1980) provides the applicable standard for evaluating claims of ineffective assistance of counsel.  *See Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000).  A defendant may show ineffective assistance of counsel under *Cuyler* without showing prejudice.  *Id.* at 781-82.  "Courts of appeals applying *Cuyler* traditionally have couched its test in terms of two questions:  (1) whether there was an *actual* conflict of interest, as opposed to a merely potential or hypothetical conflict, and (2) whether the actual conflict adversely affected counsel's representation."  *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005).  However, in 2002, the Supreme Court clarified that "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."  *Mickens v. Taylor,* 535 U.S. 162, 172 n.5 (2002). "Regardless of this clarification of the terminology, the relevant questions remain the same, and [the courts] must ask whether [defense counsel] labored under a conflict of interest, which was not merely hypothetical, and whether that conflict adversely affected the representation (*i.e.*, whether it was an actual conflict)."  *Infante*, 404 F.3d at 392.

"A conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties."  *United States v. Medina*, 161 F.3d 867, 870 n.1 (1998) (quoting *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985)) (alteration in original) (internal quotation marks omitted).  There is no actual conflict of interest, however, unless "defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client."  *Perillo*, 205 F.3d at 781.  The Fifth Circuit Court of Appeals has held that the *Cuyler* standard applies only to claims of ineffective assistance of counsel resulting from conflicts of interest caused by multiple representation.  *See United States  v. Newell*, 315 F.3d 510, 516 (5th Cir. 2002); *Beets v. Scott*, 65

F.3d 1258, 1270-72 (5th Cir. 1995) (*en banc*).  The standard enunciated in *Strickland* applies when a prisoner alleges a conflict of interest of a different ilk.  *See id.* at 1272.

Here, Akpan contends that Ogan had a conflict of interest both because he conspired with the government to have Akpan plead guilty and because Ogan was called as a witness at the hearing on Akpan's motion to withdraw his guilty plea and "testified against Akpan." (Mot. at 15, 27). Because the alleged conflict is premised on a conflict between Ogan's interests and that of Akpan, rather than between the interests of multiple clients, *Strickland* provides the proper standard of review, and prejudice is not presumed.  *See Newell*, 315 F.3d at 516; *Beets*, 65 F.3d at 1270-72.

### b. *Strickland* Test

To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691.

To establish prejudice under *Strickland*, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  Movants must "affirmatively prove prejudice."  *Id.* at 693.  The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted).  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel.  *Strickland*, 466 U.S. at 695-96.  One cannot

satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding"). In the context of a guilty plea, the *Strickland* "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). To satisfy this requirement, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 58.

### 2. *Alleged Inducement*

In this instance, Akpan alleges that Ogan indued him into pleading guilty by promising to file a motion to withdraw the plea later. Because the Court has already found no basis for Akpan's allegation that he was induced into pleading guilty by a false promise, he has shown no deficiency of counsel and no ineffective assistance on this basis. As for Akpan's assertion that Ogan deceitfully represented him by advising him that he would not receive the sentencing benefit of acceptance of responsibility if Akpan chose not to plead guilty, and the intended loss to the victim would be determined by the district judge, this was not deceitful representation. Finally, while Akpan complains that Ogan made a "racial, inflammatory, and prejudicial" attack against him by mentioning Nelson Mandela, after listening to both Akpan and Ogan testify on this issue, the Court found that while Mandela might not have been the best analogy, it was a frank statement about the

risks Akpan ran if he chose to plead not guilty rather than a threat or coercion on Ogan's part. (doc.

50 at 6). Counsel therefore was not ineffective, and no ineffective assistance of counsel rendered

Akpan's plea involuntary.

## IX.  INEFFECTIVE ASSISTANCE OF COUNSEL

Separate from his actual plea, Akpan also alleges that he received ineffective assistance of

counsel at various stages of the proceedings from three different attorneys.

In order to obtain post-conviction relief due to ineffective assistance of counsel during the

punishment phase of a non-capital case, a movant must satisfy the two-prong test established in

*Strickland*.  As noted above, he must demonstrate that counsel's performance fell below an objective

standard of reasonable professional service. *Id.*, 466 U.S. at 687-88. Second, he must establish

prejudice – that he was subjected to increased jail time due to the deficient performance of his

attorney.  *See United States v. Grammas,* 376 F.3d 433, 439 (5th Cir. 2004) (citing *Glover v. United*

*States,* 531 U.S. 198, 203 (2001)).

## A.    Plea Documents and Forfeiture

Akpan also contends that Ogan was ineffective when he failed to withdraw the plea

documents prior to Akpan entering his guilty plea, labored under a conflict of interest at the hearing

on the motion to withdraw the guilty plea, and permitted him to unknowingly forfeit his wife's car.

(Mot. at 7, 17, 22, 27-28, 43.)

With regard to Akpan's contention that Ogan was ineffective in failing to withdraw the plea

documents prior to the entry of a guilty plea, he has failed to establish either deficiency or prejudice.

According to his own account of events, Ogan informed him truthfully that if he did not plead guilty,

the government would oppose bond, that he would not receive a lower sentencing guideline for

acceptance of responsibility, and that the intended loss amount on which his sentence would be based would be determined by the Court after a PSR was completed, regardless of whether he pled guilty of was found guilty by a jury. (Mot. at 20).  Counsel providing correct information to Akpan regarding the ramifications of not pleading guilty is not ineffective assistance, and Akpan decided to plead guilty based on this accurate information.  He furthermore has not shown any prejudice because he made a knowing and voluntary guilty plea to the district judge after being adequately admonished regarding the consequences of the plea.

The alleged conflict of interest raised by Akpan – that Mr. Ogan testified in connection with his motion to withdraw guilty plea – occurred after Ogan withdrew from representing Akpan. Because Ogan no longer represented Akpan at this hearing, he was not prejudicially ineffective by testifying pursuant to the Government's subpoena. *See, e.g., United States v. Henderson*, 72 F.3d 463, 465-66 (5th Cir. 1995) (an attorney can represent his client adequately on a motion to withdraw a plea, even though the attorney's own alleged ineffectiveness forms the basis of the motion). Ogan's testimony certainly did not subject Akpan to increased jail time.

All challenges to the forfeiture of Akpan's wife's car should also be denied. The plain language of Section 2255 provides only prisoners who claim a right to be released from custody an avenue to challenge their sentences. *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994). Because Congress limited relief under 28 U.S.C. § 2255 to persons in federal custody, the Fifth Circuit has determined that Congress also meant to limit the types of claims cognizable under Section 2255 to those relating to unlawful custody. *Id.* at 1137.  Furthermore, as acknowledged by Akpan, he signed the civil forfeiture of the vehicle, which states that he was signing it pursuant to his guilty plea, the forfeiture allegations in the indictment, and the factual resume he signed. (*See*

doc. 25).  Akpan's unhappiness with the forfeiture is not evidence that his attorney permitted him to unknowingly sign it.  Akpan has also failed to establish prejudice because he has failed to establish that, even had he declined to sign the forfeiture agreement, but was still able to plead guilty pursuant to the plea agreement, that the vehicle would not have been forfeited after a forfeiture hearing based on the forfeiture allegation in the indictment.  These claims of ineffective assistance of counsel should be denied.

**B.**     **Motion to Withdraw Guilty Plea**

Akpan claims that the attorney who represented him during the hearing to consider his motion to withdraw guilty plea, Kevin Ross (Ross) was ineffective at the hearing on the motion to withdraw by failing to introduce certain letters to impeach Ogan and prove that the five-month delay in filing a motion to withdraw was the result of Ogan's failure rather than Akpan's delay.  Akpan also contends that Ross was ineffective for failing to object to the lengthy delay in determining his motion to withdraw guilty plea or to request a ruling.  (*See* Mot. at 44-45, 48-50, 53.)

Akpan asserts that he professed his innocence to Ogan in letters to him requesting that his guilty plea be withdrawn and that this evidence would impeach Ogan's testimony at the hearing to the contrary.  However, the correspondence upon which Akpan relies does not support his claim that he professed his innocence prior to receiving the PSR.  The April 26, 2004, letter attached to Akpan's motion simply states, "I am withdrawing my guilty plea unless the prosecution accept[s] the following terms[.]" (Mot. at 78).  His May 5, 2004, letter contains no information about his professed innocence. (Mot. at 81).  In any case, Akpan has not shown that he was prejudiced by the failure to introduce the letters.  As he concedes, Ogan testified at the hearing that Akpan claimed his innocence from time to time before and after his guilty plea. (*See* Mot. at 45; doc. 56-2 at 131-

- 22 -

35).  Ogan also testified at the hearing that he told Akpan that he would not file a motion to withdraw the plea because Ogan did not believe that it was right to plead guilty, get out on bond, and then "pull the plug" on the guilty plea, and Ogan instead told Akpan that he could file a motion to withdraw himself.  (doc. 56-2 at 66-67).  Ross argued at the motion hearing that it should be granted because, according to Ogan's own testimony,  Akpan had proclaimed his innocence "numerous times." (doc. 57 at 81-82).  Akpan has not shown a reasonable probability that if these letters had been presented, the Court would have found his plea to be involuntary.  Accordingly, this ineffective assistance claim should be denied.

Similarly, Akpan's claim that Ross was ineffective for failing to inform the Court of the lengthy delay before sentencing is also without merit.  As noted above, the Court fully considered Akpan's claims of unfair delay during his sentencing and concluded that he was not unfairly prejudiced as a result.  Furthermore, to the extent that Akpan's argument can be construed as a claim that his attorney was ineffective for failing to object to the delay in sentencing as a violation of Akpan's right to a speedy trial, it has been determined that he failed to establish any prejudice.  This claim is therefore likewise without merit.  *United States v. Riojas*, 2007 WL 38280, *21 (S.D.Tex. Jan. 4, 2007) (counsel not ineffective for failing to argue a speedy trial violation where Riojas had not shown any prejudice because his sentencing range would have been calculated in the same manner had he been sentenced earlier).

## C.   **Sentencing**

Akpan claims that his third attorney, Dianne Kathryn Jones McVay (McVay) was ineffective at sentencing for failing to object to the PSR, and for failing to properly object at sentencing to the loss amount contained within the PSR or to the government's breach of the plea agreement.  (Mot.

at 30-31.)  He also claims that she was ineffective by failing to show that any delay in moving to withdraw his plea was based on Ogan's failure to file a motion.  (*Id.* at 28-29, 48).

Although counsel did not file written objections to the loss amount, she did argue the issue at the sentencing hearing, and the Court specifically considered the loss amount in the context of objections previously filed by Ross and Akpan's claim that the loss amount was only $48,125.82. (doc. 92 at 8-17.)  Akpan has not established that the district court would have come to a different conclusion had McVay herself filed the written objections. *See Emery v. Johnson,* 139 F.3d 191, 198 (5th Cir. 1997) (failure to make meritless objection cannot be grounds for ineffective assistance of counsel). As discussed above, the plea agreement was not breached, so counsel was not deficient for failing to raise this claim at sentencing. *See Coker v. Thaler,* 670 F. Supp.2d 541, 554 (N.D. Tex. 2009) (appellate counsel was not ineffective for failing to appeal conviction on grounds that were considered and rejected on federal habeas review).  Finally, Akpan cannot show any prejudice with regard to his sentence because McVay did not argue that Ogan and not Akpan was the reason his motion to withdraw was not filed earlier because he in fact received a sentence that was ten months lower than the lowest sentencing guideline sentence precisely because of the delay in sentencing.

## D.    **Appeal**

Lastly, Akpan alleges that McVay was ineffective for refusing to argue in her appellate brief the Government's alleged breach of the plea agreement and for neglecting to raise the improperly-calculated loss amount in her appellate brief.  (Mot. at 31-33, 51-54).

Counsel was not ineffective for failing to raise an alleged breach of the plea agreement and a Due Process violation on appeal. "The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal" *Ellis v. Lynaugh,* 873 F.2d 830, 840 (5th

Cir. 1989); *see also Jones v. Barnes,* 463 U.S. 745, 751 (1983).  Counsel is obligated only to raise

and brief those issues that are believed to have the best chance of success. *See Schaetzle v. Cockrell,*

343 F.3d 440, 445 (5th Cir. 2003); *United States v. Williamson,* 183 F.3d 458, 463 (5th Cir. 1999).

In order to prove ineffective assistance of appellate counsel, a movant must show that the decision

not to raise an issue on appeal fell below an objective standard of reasonableness. *United States v.*

*Phillips,* 210 F.3d 345, 348 (5th Cir. 2000).  Although counsel did not raise the additional claims

suggested by Akpan, he has not shown any reason to believe that his conviction would have been

reversed had those claims been raised on direct appeal.  As noted, both claims are without merit, so

counsel was not ineffective for failing to raise them. *See Coker,* 670 F. Supp.2d at 554.

## X.  RECOMMENDATION

Akpan's motion to correct, vacate, or set aside sentence should be denied with prejudice.

**SIGNED this 10th day of June, 2013.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

- 25 -

# INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE